# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## 5:14-cv-122-FDW

| | |
|---|---|
| CALVIN LEVERNE CORPENING, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| WENDELL HARGRAVE, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 21). See 28 U.S.C. §§ 1915(e)(2); 1915A. On August 6, 2014, the Court entered an order waiving the initial filing fee and directing monthly payments to be made from Plaintiff's prison account. (Doc. No. 8). Thus, Plaintiff is proceeding in forma pauperis.

**I.   BACKGROUND**

On July 14, 2014, pro se Plaintiff Calvin Corpening, Jr., filed this action pursuant to 42 U.S.C. § 1983. (Doc. No. 1). Plaintiff filed an Amended Complaint on November 13, 2014. (Doc. No. 21). North Carolina Department of Public Safety Records show that Plaintiff was released from custody on November 13, 2014, and he is no longer in prison. Plaintiff was incarcerated at Alexander Correctional Institution when he filed this action, and he has named as Defendants the following seven individuals: (1) Wendell Hargrave, identified as the Former Superintendent of Alexander; (2) Susan R. White, identified as the Current Superintendent of Alexander; (3) Ben Carver, identified as a Former Unit Manager at Alexander; (4) FNU Tate, identified as a Current Acting Unit Manager and Former Assistant Unit Manager at Alexander;

1

(5) Vickie Coffey, identified as the Lead Registered Nurse at Alexander; (6) FNU Meyers, identified as a Case Analyst/Manager at Alexander; and (7) Candace Dalton, identified as a Social Worker at Alexander.[1]  (Id. at 2-3).

In this action, Plaintiff alleges that he is suffering from various disabilities that severely limit him in the jobs that he is able to perform in prison. Plaintiff purports to bring a claim against Defendants under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., based on the fact that he was found to be capable of performing certain jobs while incarcerated at Alexander that his disability actually prevents him from performing. More specifically, Plaintiff alleges that he is disabled and that he had been told by prison officials at Mountain View Correctional Institution, before he was transferred to Alexander:

> that my restrictions prevented me from having any employment within [NCDPS]. Mr. Meyers informed me that I would be put on the list for a library position in early April once the position was vacated. However, we later determined my restrictions would also prevent that. Our last option was to look for a class or program anywhere within [NCDPS] to allow for gain time. After weeks and months of searching we were still unable to find anything that I qualified for. … At a scheduled medical visit with the staff family nurse practitioner Mr. Guinn, he agreed that my assigned activity level was a #2, was not appropriate because I am unable to work 6-8 hours a day. That day he changed the activity level to a 4, which restricted most movement and instructed me to reapply for the retroactive gain time.

(Id. at 3-4). Plaintiff alleges that officials at Mountain View told Plaintiff that "no jobs with incentive wages and no programs at facilities that would house me because of my medical restrictions were available [and] that the retroactive gain time was the only way I would be able to receive the sentence reduction credit that I needed." (Id. at 5). Plaintiff alleges that once he

---

[1] According to the Amended Complaint, Defendants Hargrave and White are being sued in their official capacities only. The remaining Defendants are being sued in both their individual and official capacities. An action against a defendant in his official capacity is a suit against the State of North Carolina. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). State officials sued in their official capacity for anything except prospective injunctive relief are not "persons" under section 1983 and are immune from suit under the Eleventh Amendment. Id.

was transferred to Alexander, and "[a]fter the [ADA] application was received, I was informed that it would be denied and a position fold[ing] socks in the laundry room for 30 minutes a day was created for me. I was not told I had to take the job, but I was however told if I didn't accept it my release would be December 2014 instead of November 2014." (Id.). According to Plaintiff, "[w]ith the ADA gain time it would have been September 30, 2014." (Id.). Plaintiff alleges that Defendant Nurse Coffey changed Plaintiff's approved activity level without his knowledge to determine that Plaintiff was capable of performing the job. (Id.).

Plaintiff also alleges that, when he was transferred to Alexander, officials at the prison refused to provide Plaintiff with a diet that his team of surgeons and providers had ordered for him while he was at Mountain View. (Id. at 4). Plaintiff also alleges that officials at Alexander refused to honor changes that had been made as to Plaintiff's scheduled times for insulin shots. (Id.). Plaintiff additionally complains that, while incarcerated at Alexander, prison officials allowed theft of some of Plaintiff's personal property without taking any disciplinary action against the thieves, thus "promoting a hazardous environment." (Id. at 6). As relief, Plaintiff seeks various forms of injunctive and declaratory relief, as well as compensatory damages. Specifically, Plaintiff alleges that "[a]t this time my release will be 44 days past my flat minimum release date." (Id. at 9). Plaintiff seeks $6600.00, or "$150.00 per day for every day I am held past my flat minimum release date." (Id.). He also seeks $22,000.00 "for discrimination of my ADA application and accommodations." (Id.).

## II.     STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore,

§ 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief. In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

### III. DISCUSSION

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Rather, extreme deprivations are required, and "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation omitted)). The plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A plaintiff must also generally allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

To state a claim for deliberate indifference to a serious medical need, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the

denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. at 834 (internal quotation marks omitted). In the medical context, an inmate "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

With regard to the objective prong, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). With regard to the subjective prong, a prison official is deliberately indifferent if he has actual knowledge of and disregards "the risk posed by the serious medical needs of the inmate." Iko, 535 F.3d at 241 (citing Farmer, 511 U.S. at 837); see also Makdessi v. Fields, No. 13-7606, 2015 WL 1062747, at *9 (4th Cir. Mar. 12, 2015) (holding that the subjective prong "may be proven by circumstantial evidence that a risk was so obvious that it had to have been known"). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837. Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. Moreover, while the Constitution requires a prison

5

to provide inmates with medical care, a prisoner is not entitled to receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). A prisoner's difference of opinion over matters of expert medical judgment or a course of medical treatment do not rise to the level of a constitutional violation. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

As noted, Plaintiff is no longer incarcerated at Alexander Correctional Institution, and he was released from prison on November 13, 2014. Thus, Plaintiff is no longer serving a custodial sentence with the North Carolina Department of Public Safety. To this extent, Plaintiff's claims for injunctive and declaratory relief are moot and will be dismissed. See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007). Next, to the extent that Plaintiff seeks monetary damages against Defendants, Plaintiff simply does not allege any facts in the Amended Complaint showing that he was denied the minimal civilized measure of life's necessities sufficiently grave to form the basis of an Eighth Amendment violation based on his conditions of confinement or based on deliberate indifference to his serious medical needs. Plaintiff alleges generally that he was not given a proper diet while at Alexander and that prison officials changed his schedule for receiving insulin, but he does not identify a serious medical need that required a certain diet, and merely rescheduling the times when Plaintiff would receive insulin does not, without more, rise to the level of deliberate indifference to a serious medical need in violation of the Eighth Amendment. As to Plaintiff's claim that prison officials allowed theft of some of Plaintiff's personal property without taking any disciplinary action against the thieves, thus "promoting a hazardous environment," these allegations simply do not give rise to an Eighth Amendment claim. In sum, Plaintiff fails to state a claim for a violation of his Eighth Amendment rights.

The Court next addresses Plaintiff's ADA claim. The Court first notes that an ADA claim, like all federal prisoner conditions claims asserted by inmates, must be exhausted before it

can brought to federal court. See 42 U.S.C. § 1997e(a). Here, it is clear on the record, and from the Court's examination of the attached grievances, that Plaintiff did not exhaust his ADA claim before bringing it in this Court. Plaintiff's attached exhibits show that prison officials at Alexander denied Plaintiff's reasonable accommodations request on July 3, 2014, finding that "[i]nmate has been found eligible to participate in a full-time job or program and earn the appropriate sentence credits." (Doc. No. 6-4 at 15). The denial was indicated on a prison form titled an "Inmate Reasonable Accommodation Request Determination Form." The form explains that "[a]n inmate has the right to file a grievance through the inmate grievance process should he/she not agree with the determination made regarding a request for reasonable accommodation."[2] Plaintiff filed his original Complaint on July 14, 2014, eleven days after the denial of the reasonable accommodations request that gave rise to Plaintiff's purported ADA claim against Defendants, and Plaintiff alleged ADA violations in both the original Complaint and Amended Complaint. Despite asserting that he exhausted his administrative remedies as to his ADA claim, Plaintiff has attached no grievances showing that he exhausted his administrative remedies as to this claim before he filed this lawsuit, or any time since then. Moreover, out of an abundance of caution, on May 8, 2015, this Court entered an order giving Plaintiff 20 days in which to submit to this Court documents showing that he exhausted his ADA claim before bringing this action. (Doc. No. 22). The Court's Order specifically warned Plaintiff that failure to respond would result in the dismissal of his ADA claim for failure to exhaust and without further notice to Plaintiff. Plaintiff has not responded to the Court's Order dated May 8, 2015, and the time to do so has passed. Therefore, Plaintiff's ADA claim is subject to dismissal for failure to exhaust administrative remedies.

---

[2] While the actual denial was made on July 3, 2014, the form indicates that Plaintiff was served with the form on July 16, 2014.

7

Finally, the Court observes that, even if Plaintiff had exhausted his ADA claim before bringing this action, the claim would still be dismissed on initial review for failure to state a claim. First, it is well settled that individuals may not be held liable for Title II ADA violations. Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000). Thus, to the extent that Defendants are being sued in their individual capacities for ADA violations, Plaintiff's ADA claim fails. Moreover, although Title II of the ADA applies to State prisons, as public entities, see 42 U.S.C. § 12131(1); Penn. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 209 (1998), it only "prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities" of the prison. Randolph v. Rodgers, 170 F.3d 850, 857 (8th Cir. 1999). Here, Plaintiff has not alleged that he was denied access to any "services, programs, or activities" while at Alexander. Although Plaintiff alleges that prison officials at Alexander wrongly determined that he was capable of performing certain work at the prison that his disabilities should not have allowed, such alleged conduct is not discrimination within the meaning of the ADA. Cf. Jones v. Smith, 109 F. App'x 304, 309 (10th Cir. 2004) (holding that while the plaintiff-inmate's work assignment may have been the product of incompetence or personal spite on the part of the defendant, an ADA claim could not survive where the plaintiff did not claim that his assignment to medically inappropriate work was done because of his disability).

Nor has Plaintiff stated a claim based on "failure to accommodate" under the ADA. That is, Plaintiff has not alleged that he has been prevented from participating in a work services program in a different, more medically appropriate job. He merely alleges that he was offered a specific job that the prison determined he was capable of performing, and he was told that if he refused the job he would not earn certain gain time credits that would have allowed him to be

8

released a month earlier.[3] Plaintiff essentially complains that if officials at Alexander had granted his ADA application, thus finding that his disabilities prevented him from performing any jobs at the prison, he would have been allowed retroactive gain time that would have resulted in an earlier release date. Thus, his claim arises from the fact that officials at Alexander determined that Plaintiff could perform certain jobs at the prison despite his disability, whereas officials at Mountain View had determined that Plaintiff's disability prevented him from performing any jobs at the prison and he was, therefore, entitled to apply for retroactive gain time. These factual allegations simply do not sufficiently state a failure to accommodate claim under the ADA. Finally, Plaintiff's allegations regarding lack of proper medical treatment while at Alexander also do not give rise to a claim under the ADA. Rashad v. Doughty, 4 F. App'x 558, 560 (10th Cir. 2001) (stating that "[t]he failure to provide medical treatment to a disabled prisoner, while raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation"); Redding v. Hanlon, No. 06-4575, 2008 WL 762078, at *16 (D. Minn. Mar. 19, 2008) (dismissing the inmate's ADA claim where the plaintiff alleged that the defendants had denied him the single-cell accommodation ordered by his doctor, when the plaintiff was not denied access to any service or program). In sum, even if Plaintiff had exhausted his administrative remedies as to his ADA claim, his ADA claim would still be subject to dismissal on the merits for failure to state a claim.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Amended Complaint is dismissed.

---

[3] Moreover, Plaintiff's own exhibits attached to the Amended Complaint indicate that Plaintiff "lost [gain] time based on infractions" that he incurred while at Alexander. See (Doc. No. 21-1 at 3).

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Amended Complaint, (Doc. No. 21), is **DISMISSED**. Plaintiff's ADA claim is dismissed without prejudice for failure to exhaust administrative remedies, and his Eighth Amendment claim is dismissed with prejudice for failure to state a claim.

2. The Clerk is directed to terminate this action.

Signed: June 22, 2015

Frank D. Whitney
Chief United States District Judge